UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE LOQUASTO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1455-B |
| | § | (Consolidated with 3:19-CV-1624-B) |
| FLUOR CORPORATION, INC., | § | |
| FLUOR ENTERPRISES, INC., FLUOR | § | |
| GOVERNMENT GROUP, INC., | § | |
| FLUOR INTERCONTINENTAL, | § | |
| INC., and ALLIANCE PROJECT | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Opposed Motion for Jurisdictional Discovery and Extension of Time to Respond Regarding the Fluor Defendants' Rule 12(H)(3) Motion to Dismiss Under Political Question Doctrine (Doc. 28). In this motion, Plaintiffs request that the Court allow them to conduct limited discovery on the issue of whether the Court has subject matter jurisdiction over this case. The Fluor Defendants have filed a response (Doc. 33) opposing this request, and Alliance Project Services has joined this motion (Doc. 34). The Court **GRANTS** Plaintiffs' motion (Doc. 28).

## I.

## BACKGROUND

On November 12, 2016, a suicide bomber set off an explosive device on a United States military base in Bagram, Afghanistan. Doc. 1-3, Pls.' Orig. Pet., 2. The attack occurred on the morning of November 12, right before the start of a Veterans Day 5K run on the base. *Id.* at 3. Five

people were killed in the bombing; seventeen were injured. *Id.* at 2. The person who carried out the bombing, Ahmad Nayeb, was an Afghan national who worked on the base. *Id.* at 22. Now, the survivors of the attack and the family members of those who passed away bring this personal-injury lawsuit against Fluor Corporation, Inc.[1] and Alliance Project Services, Inc. They allege that Fluor and Alliance employed Nayeb on this Bagram base; that Fluor and Alliance negligently supervised and managed Nayeb; and that such negligence was the cause of their injuries. *Id.* at 24–25.

One of the issues currently before the Court is the relationship between Fluor, Alliance, and the United States government, specifically as it relates to their responsibilities on the Bagram base. Under LOGCAP,[2] Fluor contracted with the U.S. government to provide various services (*e.g.*, facilities management, hazardous materials control, food, laundry) at the Bagram base. *Id.* at 22; Doc. 21, Defs.' Mot. to Dismiss, 7–8. As part of its agreement with the U.S., Fluor was required to "utilize Afghan nationals . . . 'to the maximum extent possible.'" Doc. 21, Defs.' Mot. to Dismiss, 8–9. The purpose of this requirement was to provide economic motivators, such as employment, to Afghan locals in order to counter insurgency associated with warfare. *Id.* The U.S. government termed this the "Afghan First" program. *Id.* at 8. In order to satisfy this requirement, Fluor subcontracted with Alliance to hire Afghan locals to carry out its contractual obligations at the Bagram base. *Id.* at 9.

One of these locals was Ahmad Nayeb. Doc. 1-3, Pls.' Orig. Pet., 22. Nayeb was an employee of Alliance, which in turn contracted his services out to Fluor. *Id.* Plaintiffs allege that Nayeb was "generally managed and supervised" by Fluor. *Id.* They argue that both Fluor and Alliance negligently

---

[1] Plaintiffs have brought claims against Fluor Corporation, Inc., Fluor Enterprises, Inc., Fluor Government Group, Inc., and Fluor Intercontinental, Inc. Solely as a matter of convenience, the Court refers to these parties collectively as "Fluor" or the "Fluor Defendants."

[2] LOGCAP stands for the Army's "Logistics Civil Augmentation Program." Doc. 21, Defs.' Mot. to Dismiss, 8.

managed and supervised Nayeb while he was working at the Bagram base. *Id.* And this negligence, Plaintiffs allege, allowed Nayeb to construct an explosive device using Fluor's equipment and materials. *Id.* Further, Plaintiffs allege that because Defendants negligently supervised Nayeb, he was able to remain undetected at the base after his work shift ended and right before the start of the Veterans Day event. *Id.* Finally, Plaintiffs assert that the bombing had "absolutely zero to do with the U.S. Government's provision of security on the Base" and that the U.S. government "did not have complete, direct, or actual control over the supervision of Nayeb . . . ." *Id.*

Fluor and Alliance characterize the circumstances of Nayeb's employment differently. They assert that Nayeb had ties to the Taliban, that the U.S. Military knew about these ties, and that the military did not disclose these ties to them before the attack. Doc. 21, Defs.' Mot. to Dismiss, 10. They also argue that the Military had "plenary control" over Fluor's conduct at the base as it relates to Plaintiffs' claims. *Id.* at 35–59. For instance, Defendants assert that the military controlled Nayeb's hiring and retention, his screening and base access, and his supervision while on the base. *Id.* at 38–54. Defendants also argue that the Military had plenary control over "Force Protection" at the base. *Id.* at 51–54. From this, Defendants ask the Court to dismiss this case for want of subject matter jurisdiction because, according to them, Plaintiffs' suit will require the Court to adjudicate a nonjusticiable political question—the reasonableness of the Military's security-related decisions and policies at the Bagram base. *Id.* at 1–2.

The Fluor Defendants filed their motion to dismiss on August 20, 2019 (Doc. 21).[3] Shortly thereafter, on September 16, 2019, Plaintiffs filed a motion for leave to conduct jurisdictional

---

[3] Defendant Alliance Project joined in the Fluor Defendants' motion on October 7, 2019. *See* Doc. 32, Def.'s Resp., 1.

discovery and for an extension of time to respond to Defendants' motion to dismiss (Doc. 28). Defendants filed a response (Doc. 33) in opposition to this motion on October 7, 2019. Plaintiffs replied on October 30, 2019. Doc. 37. Plaintiffs' motion is now ripe for review.

## II.

## ANALYSIS

The question that must be decided here is whether to permit Plaintiffs to conduct limited discovery into the issues that Defendants raise in their motion to dismiss. Defendants' brief associated with their motion is over eighty pages long, and the appendix contains fifty-one exhibits spanning just over one thousand pages. Yet Defendants argue that discovery is not necessary to resolve its motion because it raises purely legal questions. Doc. 33, Defs.' Resp., 6. The Court rejects this assertion and finds that Plaintiffs must be afforded the opportunity to conduct discovery related to the issues raised in Defendants' motion.

In connection with a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court may consider any of the following: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted)). The district court's "authority to consider evidence presented beyond the pleadings allows it to devise a procedure which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citation omitted). Further, when a Rule 12(b)(1) motion is based on disputed facts, courts in this circuit and others agree that "the district court must give

the plaintiff an opportunity for discovery . . . that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.") (citation and quotations omitted). "If the court chooses to allow additional discovery, it should be limited to only that which is necessary to determine the preliminary jurisdictional issue." *Moran*, 27 F.3d at 172 (citation omitted).

In their motion, Plaintiffs claim discovery is necessary because Defendants have attached extrinsic evidence in support of their motion to dismiss. Doc. 28, Pls.' Mot., 2. Specifically, Plaintiffs argue that the thirty-four page declaration of Fluor's security director and internal documents and emails from Fluor's files warrant responsive discovery. *Id.* at 3–4. For example, Plaintiffs assert that the declaration includes "conclusory" statements about Nayeb's actions on the base, the "supervisory chain" responsible for overseeing his work, and his access to tools and components he used to construct the explosive device. *Id.* Plaintiffs conclude that it is only fair that they are provided with the opportunity to question Fluor's security director about these statements. *Id.* at 4. They also seek to obtain other, unspecified evidence related to "the truthfulness and completeness" of his statements. *Id.*

After reviewing Defendants' motion to dismiss and the evidence attached in support, the Court agrees with Plaintiffs that limited discovery should be permitted. The Court is not convinced, as Defendants argue, that their evidence "speaks for itself." *See* Doc. 33, Defs.' Resp., 7. For example, as Plaintiffs point out, Fluor's security director makes numerous assertions that are not just for "authentication and narrative context" purposes, *id.*, but instead weigh directly on both the

jurisdictional issues in the motion to dismiss and the merits of Plaintiffs' case. *See, e.g.*, Doc. 28-1, Defs.' App., Ex. 1, ¶ 11 (commenting on the employee-supervision requirements of Defendants' contract with the military that "[t]here is a difference between supervision for LOGCAP job performance and supervision for security purposes"); *id.* ¶ 15 ("Fluor did not participate in the formulation of the Military's Access Policy."); *id.* ¶¶ 19–20 (stating, without supporting documentation, that Defendants did not participate in security-related interviews and investigation); *id.* ¶ 33 ("[N]o LOGCAP provision provided Fluor any discretion or authorization to provide security supervision or escort over and above that for which the [Bagram Base] Access Policy and [Performance Work Statement] allowed or provided."). The Court does not, at this time, comment on whether or not these statements are factually correct. The Court makes note of them simply to show that they involve issues of fact that are sharply contested and most likely need to be resolved to decide Defendants' motion to dismiss. While the Court would be permitted to rely on "undisputed facts evidenced in the record" without the need for discovery, the Court must give Plaintiffs the opportunity to conduct discovery when facts are disputed. *See Williamson*, 645 F.2d at 413–14.

As further support for allowing discovery here, courts in similar cases have permitted limited discovery when deciding 12(b)(1) motions on the political-question doctrine. *See Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 405 (4th Cir. 2011) (describing discovery procedure that district court permitted); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 618 F. Supp. 2d 400, 403 (W.D. Pa. 2009) (noting that the court permitted limited discovery to decide the defendant's motion to dismiss on political-question grounds); *Smith v. Halliburton Co.*, 2006 WL 1342823, at *4 (S.D. Tex. May 16, 2006) ("The factual issues unresolved in this case render premature a determination of whether plaintiffs' suit necessarily involves questioning the force protection measures of the United

States military . . . ."). And lower courts have been reversed for not adequately developing the record before deciding such motions. *See Lane*, 529 F.3d at 554 (holding that "the case needs further factual development before it can be known whether [the political-question] doctrine is actually an impediment"). Thus, because the Court would currently have to resolve factual disputes without the benefit of discovery, the Court finds that the best course is to allow Plaintiffs the opportunity to conduct some discovery on those disputes. Then, the Court will be in a better position to make a determination on whether this case is barred by the political-question doctrine.

## III.

## CONCLUSION

Based on the above, the Court **GRANTS** Plaintiffs' Opposed Motion for Jurisdictional Discovery and Extension of Time to Respond Regarding the Fluor Defendants' Rule 12(H)(3) Motion to Dismiss Under Political Question Doctrine (Doc. 28). The parties shall have until **Friday, January 31, 2020**, to complete discovery strictly limited to the issues raised in Defendants' motion to dismiss. The Court further **ORDERS** that Plaintiffs' deadline to respond to Defendants' motion to dismiss is now **Friday, February 21, 2020**.

**SO ORDERED**.

**SIGNED: November 27, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE