UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE LOQUASTO, et al. | § | |
| | § | |
| VS. | § | |
| | § | |
| FLUOR CORPORATION, INC., | § | C.A. NO.  3:19-CV-01455-B |
| FLUOR ENTERPRISES, INC., | § | (Consolidated with |
| FLUOR GOVERNMENT GROUP, INC., | § | C.A. No. 3:19-cv-01624-B) |
| FLUOR INTERCONTINENTAL, INC. and | § | |
| ALLIANCE PROJECT SERVICES, INC. | § | JURY TRIAL DEMANDED |

# Plaintiffs' Response to Defendants' Rule 12(b)(1) Motion to Dismiss and Summary-Judgment Motion

David George
Texas Bar No. 00793212
BAKER•WOTRING LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Telephone: (713) 980-1700
Fax: (713) 980-1701
dgeorge@bakerwotring.com

Lisa Blue
Texas Bar No. 02510500
BARON AND BLUE
3300 Oak Lawn Ave., 3rd Floor
Dallas, Texas 75219
Telephone: (214) 750-1700
lblue@baronandblue.com

Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Peter K. Taaffe
Texas Bar No. 24003029
ptaaffe@txattorneys.com
THE BUZBEE LAW FIRM
JPMorgan Chase Tower
600 Travis, Ste. 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Fax: (713) 223-5909

ATTORNEYS FOR PLAINTIFFS

TABLE OF CONTENTS

I.   Background ........................................................................................................... 2

     A.   APS' employee Nayeb—who was being supervised by Fluor—detonated a
          suicide bomb after sneaking away from their supervision at the end of his
          work shift. ................................................................................................... 2

     B.   The Defendants were required to supervise Nayeb while he was at work and
          make sure he left the base when his shift was over. ................................... 4

     C.   The military determined that Fluor failed to comply with its contractual
          requirements to supervise Nayeb, which allowed him to construct and
          detonate the bomb. ..................................................................................... 7

II.  Response to Rule 12(b)(1) Motion to Dismiss Under Political Question Doctrine ........... 9

     A.   Political-question doctrine. ......................................................................... 9

     B.   This Court should deny the Defendants' Rule 12(b)(1) motion to dismiss
          under the political-question doctrine. ....................................................... 13

          1.   Claims regarding the Defendants' failure to supervise Nayeb—as
               required by the military contract—do not implicate the political-
               question doctrine. ............................................................................ 13

               a.   There is not "a textually demonstrable constitutional
                    commitment of the issue to a coordinate political department." .. 15

               b.   There is not "a lack of judicially discoverable and manageable
                    standards for resolving it." .......................................................... 16

               c.   It is possible to decide this case "without an initial policy
                    determination of a kind clearly for nonjudicial discretion." ......... 16

          2.   The military's liability will not have to be considered because it was
               not a legal cause of the bombing—instead, at most it merely furnished
               a condition that allowed the bombing, which is insufficient under
               Texas law. ....................................................................................... 17

III. Response to Summary Judgment Motion Based on 28 U.S.C. § 2680(j) ........................ 21

     A.   The Fifth Circuit has never recognized that combatant-activities preemption
          under 28 U.S.C. § 2680(j) applies to claims against government contractors. ..... 22

     B.   Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative
          defense that the Defendants have not pled. ............................................... 24

     C.   Even if combatant-activities preemption under 28 U.S.C. § 2680(j) applies to
          claims against government contractors, it should be limited to procurement
          contracts and not apply to claims brought by United States citizens supporting
          the United States military ......................................................................... 25

D.      The Defendants have not conclusively established that the Plaintiffs' claims arise out of "combatant activities" "during time of war." ................................... 27

    1.     The Defendants have not conclusively established that they were engaged in "combatant activities." .......................................................... 27

    2.     The Defendants have not conclusively established that Nayeb's actions took place "during time of war." .............................................................. 28

E.      The Plaintiffs are entitled to discovery on the merits before they are required to respond to the Defendants' summary-judgment motion................................... 29

IV.    Conclusion ........................................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**

*Arnold v. United States*, 140 F.3d 1037 (5th Cir. 1998) (unpublished) .................................... 23, 28

*Baker v. Carr*, 369 U.S. 186 (1962) ............................................................................................ 11-14

*Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968) ............................................................................... 21

*Brokaw v. Boeing Co*., 137 F. Supp. 3d 1082 (N.D. Ill. 2015) ................................................. 24, 27

*Cohens v. Virginia*, 6 Wheat. 264 (1821) ......................................................................................... 9

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ......................... 9

*England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411 (1964) .......................................... 9

*Fisher v. Halliburton*, 390 F. Supp. 2d 610 (S.D. Tex. 2005) ....................................................... 25

*IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794 (Tex. 2004) ................................................................................................................................................ 20

*In re KBR, Inc. Burn Pit Litig*., 744 F.3d 326 (4th Cir. 2014) ...................................................... 29

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992) ......................................... 23, 24, 26, 28-29

*Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Services, Inc*., 853 F.3d 173 (5th Cir. 2017) .......................................................................................................................... 10-11, 14

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008) .................................................................. 10-21

*Lear Siegler v. Perez*, 819 S.W.2d 470 (Tex. 1991) ...................................................................... 19

*Lessin v. Kellogg Brown & Root*, CIVA H-05-01853, 2006 WL 3940556 (S.D. Tex. June 12, 2006) ........................................................................................................................................ 26

*Martin v. Halliburton*, 618 F.3d 476 (5th Cir. 2010) ............................................................... 22-23

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co*., 241 F. Supp. 3d 737 (N.D. Tex. 2017) ...................................................................................................................................... 27

*McMahon v. Gen. Dynamics Corp*., 933 F. Supp. 2d 682 (D.N.J. 2013) ...................................... 26

*McMahon v. Presidential Airways, Inc*., 502 F.3d 1331 (11th Cir. 2007). ............................ 15, 17

*McManaway v. KBR, Inc*., 852 F.3d 444 (5th Cir. 2017) ............................... 13, 15, 16, 18, 24, 27

*Quijano v. United States*, 325 F.3d 564 (5th Cir. 2003) ................................................................ 23

*Saldano v. O'Connell*, 322 F.3d 365 (5th Cir. 2003) ..................................................................... 11

*Saleh v. Titan Corp*., 580 F.3d 1 (D.C. Cir. 2009) .................................................................... 23-24

*Smith v. Halliburton Co*., CIV.A. H-06-0462, 2006 WL 2521326 (S.D. Tex. Aug. 30, 2006) ........................................................................................................................................ 16, 25-26

*Spectrum Stores, Inc. v. Citgo Petroleum Corp*., 632 F.3d 938 (5th Cir. 2011) ............................ 9

*United States v. Burzynski Cancer Research Inst*., 819 F.2d 1301 (5th Cir. 1987) ..................... 25

*Willcox v. Consolidated Gas Co.*, 212 U.S. 19 (1909) ..................................................................... 9

**Statutes**

28 U.S.C. § 2674............................................................................................................................ 23

28 U.S.C. § 2680(j) ..............................................................................................................ii, 1, 2, 21-30

28 U.S.C. § 2680............................................................................................................................ 23

TEX. CIV. PRAC. & REM. CODE § 33.003(b).................................................................................. 18

TEX. CIV. PRAC. & REM. CODE § 33.004 ...................................................................................... 18

TEX. CIV. PRAC. & REM. CODE § 33.004(l).................................................................................. 18

The Plaintiffs[1] file this response to the Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction under the political-question doctrine and, alternatively, Rule 56 motion for summary judgment based on combatant-activities preemption under 28 U.S.C. § 2680(j).[2]

This Court should deny the Defendants' Rule 12(b)(1) motion to dismiss under the political-question doctrine because this lawsuit is about the Defendants' failure to properly supervise Ahmad Nayeb at the time of the explosion.  This lawsuit does not require this Court or the jury to determine whether the military was negligent because the military—at most—created the condition that allowed the Defendants' negligence to cause the injury, which is insufficient to support causation under Texas law.  So there is not a nonjusticiable political question.

This Court should deny the Defendants' Rule 56 motion for summary judgment based on combatant-activities preemption under 28 U.S.C. § 2680(j) because:

- The Fifth Circuit has never recognized that combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors;

- Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that the Defendants have not pled;

---

[1] The "Plaintiffs" are Plaintiffs Charlotte Loquasto, Michael Iubelt, Shelby Iubelt, individually, on behalf of the estate of PFC Tyler Iubelt, and as next friend of V.I., a minor, Julianne Perry, individually, on behalf of the estate of Staff Sgt. John Perry, deceased, and as next friend of L.P. and G.P., minors, Kathleen Perry, Stewart Perry, Marissa Brown, individually and on behalf of the estate of Sgt. First Class Allan E. Brown, deceased, Gail Provost, individually and on behalf of the estate of Peter Provost, Meghan Hollingsworth, Sarah Peterson, Brian Provost, Spencer Provost, Louis Provost, Gertrude Provost, Katrina Reeves, individually and on behalf of the estate of Col. Jarrold Reeves (Ret.), deceased, and as next friend of J.R., a minor, Summer Dunn, Hannah Mason, Mallory Reeves, Charlotte Reeves, Chris Colovita, Samuel Gabara, Lakeia Stokes, Maggie Bilyeu, India Sellers, Addie Ford, Robert Healy and Haylee Rodriguez.

[2] Doc. 45 (filed Mar. 23, 2020).  The motion was filed by Defendants Fluor Corporation, Inc.; Fluor Enterprises, Inc.; and Fluor Government Group International, Inc. (collectively, "Fluor").  Defendant Alliance Project Services, Inc. ("APS") joined Fluor's motion.  Doc. 47 (filed Mar. 23, 2020).  Fluor and APS will be referred to collectively as the "Defendants."

1

- Even if combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors, it should be limited to procurement contracts and not apply to service contracts like the one here;

- The Defendants have not conclusively established that the Plaintiffs' claims arise out of "combatant activities" "during time of war"; and

- The Plaintiffs are entitled to discovery on the merits before they are required to respond to the Defendants' summary-judgment motion.

## I.    Background

On Veterans Day 2016, Ahmad Nayeb detonated a bomb at the Bagram Air Base in Afghanistan.[3]  Five men were killed and 17 soldiers were badly injured.  Nayeb was an employee of APS and was primarily supervised and managed by Fluor.[4]  The Defendants failed to properly supervise Nayeb, which allowed him to build and explode the bomb.[5]

### A.    APS' employee Nayeb—who was being supervised by Fluor—detonated a suicide bomb after sneaking away from their supervision at the end of his work shift.

On the morning of Saturday, November 12, 2016, more than 200 personnel residing at the base were gathering for a Veterans Day 5k race set to begin at 6:15 a.m.[6]  The meeting point for the race was an area called the "Disney Clamshell."[7]  Also on the base was Nayeb.

---

[3] Unless otherwise specified, the statements in this Background section come from the Plaintiffs' Original Petition. Doc. 1-3 at 7-10, 27-29.  The page numbers for documents filed on the Court's ECF system refer to the ECF page numbers at the top of the page, not the page numbers on the original document.

[4] Bryan Wilson Depo. at 31, 63, attached as Ex. A; Ex. 7 to Ex. A at 8.  The Defendants primarily base their motion to dismiss on a declaration from Bryan Wilson, Fluor's Security Director, who was deposed.  Doc 45-1.  APS' owner Tod Nickles was also deposed.  Tod Nickles Deposition at 5, attached as Ex. B.  APS was the Fluor subcontractor that actually employed Nayeb.  Ex. B at 8; Ex. B at 13 (Nayeb "was employed by APS by direction of Fluor.").

[5] Ex. A at 67.

[6] Ex. 7 to Ex. A at 1.

[7] *Id*.

2

Nayeb worked at Fluor's HAZMAT work center within Fluor's Non-Tactical Vehicle Yard at the base.[8]  Bryan Wilson, Fluor's Security Director, admitted that Nayeb was not supposed to be on the base on the morning of November 12, 2016, after his shift ended.[9]  The Defendants were required to ensure that Afghan nationals like Nayeb were physically escorted off the base at the end of their work shifts.[10]

Nayeb was supposed to have been escorted off the base by bus at 4:45 a.m. that morning at the end of his shift.  But that did not happen.[11]  On November 12, 2016, instead of being escorted off the base by bus at the end of his shift, Nayeb walked—totally unsupervised by the Defendants—toward the assembly point for the Veterans Day 5k race.[12]

That morning, a group of soldiers had gathered at the Clamshell, intending to conduct a combatives training class.  Upon arrival, they saw that the 5k run would be taking place, as the organizers were preparing for the event.  The soldiers decided to hold their training at another facility, so they left the Clamshell and began walking alongside Disney Drive towards the alternate location.   Meanwhile, Fluor employees Jerrold Reeves and Peter Provost, both avid runners, left their quarters and headed towards the Clamshell for the 5k run.  They also traveled alongside Disney Drive towards the Clamshell.   It was still early in the morning and was dark.

By all accounts, Nayeb intended to travel to the Clamshell and detonate his bomb among the hundreds of people who would be gathering there later that morning for the race.  Nayeb attempted to hide between several concrete bunkers along the walkway.  The soldiers, as well as

---

[8] Ex. 7 to Ex. A at 7.

[9] Ex. A at 42.

[10] Ex. B at 111.

[11] Ex. B at 18-19, 44.

[12] *Id*.

Reeves and Provost, were approaching Nayeb from different directions.  Unbeknownst to them, they were converging on Nayeb.   At some point, Nayeb realized that he would be caught and would not reach his intended target.   Reeves and Provost were closest to the bomber when Nayeb jumped up, faced them, and detonated his bomb.  Reeves and Provost sustained a direct hit and likely died immediately.   The soldiers, also within 15 feet of the bomber, took shrapnel directly from the bomb and also from shrapnel ricocheting off of the concrete bunkers.

- PFC Tyler Iubelt sustained extensive wounds and burns from the bombing.  Witnesses report that he survived the bombing but was close to death.  EMTs who arrived on the scene described difficulty performing CPR on him because of the extent of burns to his body.

- Staff Sgt. John Perry was struck with shrapnel in his eye, which continued to his brain.  He died on the scene.

- Staff Sgt. Allan Brown sustained extensive shrapnel wounds and burns.  Witnesses tell of him directing EMTs to take care of other soldiers and constantly encouraging his fellow soldiers, as he held his intestines in his body with his hands.  Sgt. Brown received care at Bagram, then Germany, then at Walter Reed Hospital.  After several weeks, he finally succumbed to his injuries.[13]

Other soldiers sustained severe and life-altering injuries.

## B.   The Defendants were required to supervise Nayeb while he was at work and make sure he left the base when his shift was over.

Wilson admitted that it was Fluor's responsibility to supervise Nayeb's "day-to-day work" on the base.[14]  Wilson admitted that "Nayeb's work performance [was] supervised by Fluor while he was employed at the Bagram Airfield nontactical vehicle yard."[15]  Wilson also admitted that under the LOGCAP contract, it was Fluor's duty to "provide the necessary

---

[13] Ex. 7 to Ex. A at 5.

[14] Ex. A at 18; *see also* Ex. A at 60.

[15] Ex. A at 57.

4

supervision for personnel required to perform this contract" and that Fluor was "responsible for oversight of such personnel."[16]

Nayeb was an APS employee, but he performed work for Fluor and was supervised by Fluor.[17]  So Nayeb "either had an APS or Fluor supervisor for his day-to-day work activity."[18] Wilson admitted that there was no one in the military supervising Nayeb on the base—instead, supervising his work "was Fluor's job."[19]  While the United States military controlled the base as a whole, "Fluor had supervision at the work area."[20]

APS handled scanning its employees in and out, keeping track of their hours work, and paying them.[21]  But Fluor supervised the APS employees like Nayeb regarding their work.[22]  At the time of the bombing, Nayeb "was under the direct accountability of the Fluor department supervisor."[23]

Wilson admitted that under Flour's contract with the military, it was "responsible to provide transportation and supervision necessary for its employees to accomplish their work."[24] Wilson admitted that Fluor employees "served as escorts for local nationals who worked in the

---

[16] Ex. A at 61-62; Ex. 3 to Ex. A at 5.

[17] Ex. A at 31, 63.

[18] Ex. A at 31.

[19] Ex. A at 32; Ex. B at 107 (Nickles was "not aware of any military personnel supervising Nayeb while he was doing his actual work").

[20] Ex. B at 26; Ex. 7 to Ex. A at 8 ("Fluor is responsible for all of its employees, subcontractors, and subcontractor employee actions").

[21] Ex. B at 21.

[22] Ex. B at 25; Ex. B at 106 ("Nayeb's work activities were supervised by Fluor").

[23] Ex. B at 93.

[24] Ex. A at 76.

nontactical vehicle yard."[25]  Wilson also admitted that Fluor and APS employees "were responsible for supervising the transport of local nationals from the entry control point to the nontactical vehicle yard and from the nontactical vehicle yard back to the entry control point at the shift change."[26]  "Fluor was responsible for transporting Nayeb from the badging/clocking-in station to the work area and back."[27]  It was Fluor's policy that "local national employees, including Nayeb, were to be physically escorted from the work site by Fluor."[28]

Wilson admitted that Nayeb was "supposed to be immediately escorted off the base" after he finished his work.[29]  Wilson also admitted that "Fluor and APS are supposed to make sure that the escort happens."[30]  In this lawsuit, the Plaintiffs have alleged that Nayeb signed out after his shift ended, but that he was not "escorted off the base, as per policy."[31]  Wilson admitted that he could not dispute that and that it was "a strong theory."[32]

Wilson admitted that the military had put "escort policies in place" that Fluor was supposed to adhere to for Afghan nationals like Nayeb.[33]  Nayeb was clocked in on November 11, 2016, but no records showed that he ever clocked out that day or on November 12, 2016, the day of the explosion.[34]  Wilson admitted that an APS employee signed Nayeb out at the end of

---

[25] Ex. A at 78-79.

[26] Ex. A at 79.

[27] Ex. B at 111.

[28] *Id*.

[29] Ex. A at 42.

[30] Ex. A at 43.

[31] Ex. A at 44.

[32] *Id*.

[33] Ex. A at 34.

[34] Ex. B at 18-19.

the shift that day and stated that "all local nationals" were accounted for before the bus left for the base gate.[35]  At that point, Nayeb was supposed to "[g]et on a bus and leave the base."[36]  The rules required that "when you sign out, you leave."[37]  Both Fluor and APS knew that was the rule.[38]  Wilson admitted that Fluor and APS "enforce the rules."[39]  But—as Wilson admitted—Nayeb "did not exit the base."[40]

Nayeb exploded the bomb shortly after his work ended, when he should have been off the base.[41]  The place where Nayeb exploded the bomb was "a little over a mile" from his work location.[42]  Wilson admitted that Nayeb either took a bus or walked to the location where he detonated the bomb.[43]

## C. The military determined that Fluor failed to comply with its contractual requirements to supervise Nayeb, which allowed him to construct and detonate the bomb.

Wilson claimed that Fluor supervised Nayeb "in accordance with government regulations and requirements."[44]  Wilson admitted that the "U.S. military expects Fluor to follow the contract."[45]

---

[35] Ex. A at 34.

[36] Ex. A at 35.

[37] Ex. A at 37.

[38] Ex. A at 38.

[39] *Id*.

[40] Ex. A at 34.

[41] Ex. A at 32.

[42] Ex. A at 33.

[43] *Id*.

[44] Ex. A at 58.

[45] Ex. A at 40.

But Wilson admitted that the United States military determined that "it is indisputable that Fluor did not comply with the key contractual requirements of the contract, namely in the areas of supervision of local national labor and adherence to escort requirements."[46] Wilson also admitted that the military found that "Fluor failed to ensure the local national employee was properly escorted."[47] Wilson admitted that the military found that "the suicide bomber managed to leave the work facility unescorted, which violated policy."[48] The military determined that Fluor failed to "reasonably supervise" Nayeb at the nontactical vehicle yard, where he worked.[49]

The military also determined that Fluor's "lack of reasonable supervision facilitated Nayeb's ability to freely acquire most of the components necessary for the construction of the suicide vest" and the "freedom of movement to complete its construction."[50] While Wilson denied that, he could not provide any evidence on how "Nayeb acquired most of the components necessary for the construction of the suicide vest."[51]

The military found that "Fluor's systemic lack of reasonable supervision enabled Nayeb to go undetected from 0045 until 0538 on 12 November, '16, which coincides with the average walking time of 53 minutes from the nontactical vehicle yard to the blast site."[52]

When asked whether Nayeb not being properly escorted off the base had anything "to do with the U.S. Government"—as opposed to being a Fluor and APS issue only—Wilson admitted

---

[46] Ex. A at 23-24; Ex. 2 to Ex. A at 2.

[47] Ex. A at 25; Ex. 2 to Ex. A at 2.

[48] Ex. A at 26; Ex. 2 to Ex. A at 2.

[49] Ex. A at 63.  The military found that Nayeb had been caught sleeping while he should have been working.  Ex. A at 68; Ex. 7 to Ex. A at 12.

[50] Ex. A at 67; Ex. 7 to Ex. A at 12.

[51] Ex. A at 68.

[52] Ex. A at 82; Ex. 7 to Ex. A at 15.

that he could not "confirm or deny" that the U.S. Government had anything to do with that.[53]
Wilson admitted that he "cannot say" whether Nayeb not being properly escorted had anything
"to do with the United States Army or the Air Force."[54]

## II.     Response to Rule 12(b)(1) Motion to Dismiss Under Political Question Doctrine

This Court should deny the Defendants' motion to dismiss the Plaintiffs' claims under the
political-question doctrine because this lawsuit is about the Defendants' failure to properly
supervise Nayeb at the time of the explosion.  This lawsuit does not require this Court or the jury
to determine whether the military was negligent because the military—at most—created the
condition that allowed the Defendants' negligence to cause the injury, which is insufficient to
support causation under Texas law.  So there is not a nonjusticiable political question.

## A.     Political-question doctrine.

The political-question doctrine applies when a federal court otherwise has jurisdiction
over a case.[55]  The Supreme Court has repeatedly emphasized that, while federal courts are
courts of limited jurisdiction, they have a duty to exercise the jurisdiction they are given.[56]  So
federal courts "have no more right to decline the exercise of jurisdiction which is given, than to
usurp that which is not."[57]  Federal courts, therefore, must carefully consider claims that the

---

[53] Ex. A at 37.

[54] Ex. A at 38.

[55] *See*, *e.g.*, *Spectrum Stores, Inc. v. Citgo Petroleum Corp*., 632 F.3d 938, 948 (5th Cir. 2011).

[56] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976) ("federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them'"); *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 415 (1964) ("'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction'") (quoting *Willcox v. Consolidated Gas Co*., 212 U.S. 19, 40 (1909)).

[57] *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821).

political-question doctrine applies, lest they improperly fail to exercise jurisdiction over cases properly before them.

In deciding whether there is a political question, courts take " the well-pled factual allegations of the complaint as true, viewed in the light most favorable to plaintiff."[58]

In considering a Rule 12(b)(1) motion to dismiss based on the political-question doctrine, a court may find a plausible set of facts by considering any of the following: (1) the complaint; (2) the complaint, supplemented by undisputed facts evidenced in the record; or (3) the complaint, supplemented by undisputed facts, plus the court's resolution of disputed facts.[59]  A court cannot dismiss a case based on the political-question doctrine if, "viewing the allegations in the most favorable light," the plaintiff "can prove any plausible set of facts that would permit recovery against" the defendant without "compelling the court to answer a nonjusticiable political question."[60]

The Supreme Court has set out six factors for courts to consider when determining whether there is a nonjusticiable political question:

1. "a textually demonstrable constitutional commitment of the issue to a coordinate political department";

2. "a lack of judicially discoverable and manageable standards for resolving it";

3. "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion";

---

[58] *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Services, Inc.*, 853 F.3d 173, 178 (5th Cir. 2017).

[59] *Id.*; *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

[60] *Kuwait Pearls*, 853 F.3d at 178.

4. "the impossibility of a court's undertaking the independent resolution without expressing lack of the respect due coordinate branches of government";

5. "an unusual need for unquestioning adherence to a political decision already made";

6. "or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."[61]

"The inextricable presence of one or more of these factors will render the case nonjusticiable under the Article III 'case or controversy' requirement."[62]

The Defendants argue that tort claims against government contractors in war zones are barred by the political-question doctrine.[63]  But the Fifth Circuit has noted that many cases have held that "tort claims against civilian contractors performing support services in a war zone do not necessarily raise nonjusticiable political questions."[64]

The Fifth Circuit has held that while the Supreme Court's "formulations provide useful analytical guideposts in our analysis, 'whether an issue presents a nonjusticiable political question cannot be determined by a precise formula.'"[65]  By invoking the political-question doctrine, a defendant is asking a federal court "to declare that the very design of our federal government compels the Plaintiffs to seek redress from the political branches for [the defendant's] alleged fraudulent and negligent acts."[66]  "This requires a 'delicate exercise in

_____

[61] *Baker v. Carr*, 369 U.S. 186, 217 (1962); *Kuwait Pearls*, 853 F.3d at 178–79.  The Defendants rely only on the first three factors and make no attempt to show that the final three factors apply.  Doc. 45 at 33-34.

[62] *Kuwait Pearls*, 853 F.3d at 179 (cleaned up) (quoting *Lane*, 529 F.3d at 558).

[63] Doc. 45 at 37.

[64] *Lane*, 529 F.3d at 568.

[65] *Id.* at 558 (cleaned up) (quoting *Saldano v. O'Connell*, 322 F.3d 365, 368 (5th Cir. 2003)).

[66] *Id.* at 559.

11

constitutional interpretation,' an exercise that is not satisfied by simplistically plugging facts into factors."[67]

Before a court can hold that a claim is barred by the political-question doctrine, it must "find that all plausible sets of facts that could be proven would implicate particular authority committed by the Constitution to Congress or the Executive."[68]  Before it can dismiss a case based on the political-question doctrine, the court "must satisfy itself that political question will certainly and inextricably present itself."[69]  The Fifth Circuit has held that the Supreme Court's six factors are "primarily concerned with direct challenges to actions taken by a coordinate branch of the federal government."[70]

The Defendants claim that "a Military contractor suit will raise a political question if the Military exercised direct, plenary control over the contractor's conduct at issue."[71]  Most of their argument is based on this supposed "plenary control" rule.[72]  But the Fifth Circuit has never adopted the "plenary control" rule—instead, the Defendants rely solely on caselaw from other circuits for this supposed rule.[73]  The Fifth Circuit has expressly rejected the idea that the political-question inquiry can be resolved by a single catchphrase.  Instead, the Fifth Circuit has emphasized that "whether suits against military contractors are barred by the political question

---

[67] *Id.* (quoting *Carr*, 369 U.S. at 211).

[68] *Id.* at 559-60.

[69] *Id.* at 565.

[70] *Id.* at 560.

[71] Doc. 45 at 37.

[72] *Id*. at 36-70.

[73] *Id*. at 37.

doctrine is a fact-intensive question."[74]  Courts must conduct a "discriminating inquiry into the precise facts and posture of the particular case," rather than "semantic cataloguing" of issues as implicating "foreign policy" or "national security."[75]

The Defendants repeatedly argue that potential evidence regarding this case is classified.[76]  But the Fifth Circuit has held that "the fact that a trial might require the use of classified information" is not part of the political-question analysis.[77]  It emphasized that "federal courts are capable of evaluating sensitive or privileged information in camera and providing other needed protections."[78]

## B.   This Court should deny the Defendants' Rule 12(b)(1) motion to dismiss under the political-question doctrine.

This Court should deny the Defendants' Rule 12(b)(1) motion to dismiss under the political-question doctrine because this lawsuit does not require this Court or the jury to determine whether the military was negligent.  Instead, the military—at most—created the condition that allowed the Defendants' negligence to cause the injury, which is insufficient to support causation under Texas law.  So there is not a nonjusticiable political question.

### 1.   Claims regarding the Defendants' failure to supervise Nayeb—as required by the military contract—do not implicate the political-question doctrine.

The Defendants focus on the fact that the military provided security at the base and determined who had access to the base.[79]  While that may be correct, that is separate from the

---

[74] *McManaway v. KBR, Inc.*, 852 F.3d 444, 451 n.6 (5th Cir. 2017).

[75] *Lane*, 529 F.3d at 558 (quoting *Carr*, 369 U.S. at 216).

[76] Doc. 45 at 24, 29, 75, 84.

[77] *Lane*, 529 F.3d at 567-68 ("Distinguishable from political question concerns is the fact that a trial might require the use of classified information.").

[78] *Id.* at 568.

[79] Doc. 45.

question of whether the Defendants failed to supervise Nayeb while he was at work and failed to make sure that he left the base at the end of his shift.  The Plaintiffs are not alleging that the Defendants were negligent in hiring Nayeb or were negligent in allowing Nayeb onto the base. Instead, the Plaintiffs focus their allegations on the Defendants' negligence in performing their contractually required duties to supervise Nayeb while he was at work and to make sure he left the base at the end of his shift.

The Fifth Circuit has emphasized that the political-question doctrine applies only if the court determines "that all plausible sets of facts that could be proven" violate the political-question doctrine.[80]  So the fact that some allegations could potentially raise issues barred by the political-question doctrine does not mean that the entire case is dismissed.  Instead, the court should narrow the issues to those that would not violate the political-question doctrine.[81]

The Defendants claim that three of the Supreme Court's six political-question factors apply:

1.  "a textually demonstrable constitutional commitment of the issue to a coordinate political department";

2. "a lack of judicially discoverable and manageable standards for resolving it"; and

3. "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion."[82]

But examination of those factors shows that they do not necessarily apply in this case.

---

[80] *Lane*, 529 F.3d at 559-60.

[81] *Id.*

[82] Doc. 45 at 33-34; *see Carr*, 369 U.S. at 217; *Kuwait Pearls*, 853 F.3d at 178–79.

### a.   There is not "a textually demonstrable constitutional commitment of the issue to a coordinate political department."

As private companies, the Defendants are "not part of a coordinate branch of the federal government."[83]  The Defendants, therefore, face a "double burden."[84]  The Defendants must first "demonstrate that the claims against it will require reexamination of a decision by the military."[85]  Then, it must demonstrate that "the military decision at issue" is "insulated from judicial review."[86]

The Fifth Circuit has held that the political-question doctrine does not apply if the plaintiffs have "presented a plausible set of facts" that "might allow causation to be proven under one tort doctrine without questioning the Army's role."[87]  A key issue is whether the plaintiffs are challenging the "military's ultimate decision" or whether they are "challenging the way in which [the government contractor] performed the duties it was given by the military."[88]  The political-question doctrine does not bar the suit if the defendants cannot show that resolving the plaintiffs' claims "will require reexamination of any decision made by the U.S. military."[89]

As explained in more detail below, the military's decisions will not have to be reexamined by the Court or jury because—even if the military were negligent—those decisions were not a proximate cause of the bombing.[90]

---

[83] *Lane*, 529 F.3d at 560.

[84] *Id.*

[85] *Id.*; *see also McManaway*, 852 F.3d at 451 (Defendants "must show that the claims will require reexamination of a military decision that is insulated from judicial review.").

[86] *Lane*, 529 F.3d at 560; *see also McManaway*, 852 F.3d at 451.

[87] *Lane*, 529 F.3d at 562.

[88] *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1361 (11th Cir. 2007).

[89] *Id.*

[90] *See* § II(B)(2) below.

15

### b. There is not "a lack of judicially discoverable and manageable standards for resolving it."

The Fifth Circuit has held that "legal questions that may be resolved by the application of traditional tort standards" are "plainly discoverable and manageable by the judiciary."[91]  As the Fifth Circuit recognized when rejecting a political-question claim by a government contractor, the "standards for judging at least the assertions of civilian employers that cause injury to their employees are readily available."[92]

The Plaintiffs' claims are based on the Defendants' failure to supervise Nayeb at his workplace and to make sure he left the base when his shift was over.  Those can be resolved by the application of traditional tort standards" that are "plainly discoverable and manageable by the judiciary."[93]  The Defendants, therefore, have not carried their burden of establishing that there is a lack of judicially discoverable and manageable standards for resolving this case.

### c. It is possible to decide this case "without an initial policy determination of a kind clearly for nonjudicial discretion."

Federal courts have held that a case cannot be decided "without an initial policy determination of a kind clearly for nonjudicial discretion" when the court must "substitute its judgment for that of the military on the issue of whether adequate force protection measures were in place."[94]  The Plaintiffs are not challenging the military's "force protection measures." Instead, the Plaintiffs are arguing that the Defendants failed to comply with their contractual duty to properly supervise Nayeb.  The Plaintiffs have no disagreement with the military in this case.

---

[91] *McManaway*, 852 F.3d at 451.

[92] *Lane*, 529 F.3d at 563.

[93] *McManaway*, 852 F.3d at 451.

[94] *Smith v. Halliburton Co.*, CIV.A. H-06-0462, 2006 WL 2521326, at *6 (S.D. Tex. Aug. 30, 2006); Doc. 45 at 74.

The Defendants argue that their defense will require the military's decisions to be considered, but—as explained below—that is not the case because the military's decisions are not a legal cause of the explosion.[95]

### 2. The military's liability will not have to be considered because it was not a legal cause of the bombing—instead, at most it merely furnished a condition that allowed the bombing, which is insufficient under Texas law.

The Defendants have alleged that the United States military is a responsible third party under Texas law whose negligence must be considered.[96]  The Defendants contend that because this Court must weigh the military's negligence, there is necessarily a political question.[97]  But while the Defendants have made that allegation, they have not carried their burden of establishing that the military's negligence will have to be considered.

The Fifth Circuit has held that the political-question doctrine does not apply if the plaintiffs have "presented a plausible set of facts" that "might allow causation to be proven under one tort doctrine without questioning the Army's role."[98]  A key issue is whether the plaintiffs are challenging the "military's ultimate decision" or whether they are "challenging the way in which [the government contractor] performed the duties it was given by the military."[99]  The political-question doctrine does not bar the suit if the defendants cannot show that resolving the plaintiffs' claims "will require reexamination of any decision made by the U.S. military."[100]  The political-question doctrine does not apply when, "viewing the facts in the light most favorable to

---

[95] *See* § II(B)(2) below.

[96] Doc. 20 (filed Aug. 19, 2019); Doc. 45 at 77.

[97] Doc. 45 at 25.

[98] *Lane*, 529 F.3d at 562.

[99] *McMahon*, 502 F.3d at 1361.

[100] *Id.*

17

the plaintiffs, the plaintiffs' claims only required the court to analyze [the defendants'] actions," because those can "examined by a federal court without violating the Constitution's separation of powers."[101]

Courts must consider how cases will be actually tried when determining if there is a political question requiring dismissal.[102]  When that is taken into account, it becomes clear that the military's responsibility will not have to be considered by the jury.

Texas law allows defendants to designate other people or entities as responsible third parties.[103]  But the jury is not allowed to consider those third parties' responsibility unless the defendant can provide legally sufficient evidence that the third party was negligent and that the third party's negligence proximately caused the injury.[104]  In addition, after discovery has been conducted, a plaintiff can move to strike the designation of a responsible third party if there is no evidence that the third party is legally responsible for the injury.[105]

Because the military's negligence, if it were negligent, would be too remote to be considered a proximate cause under Texas law, it will not have to be considered by the jury. Instead, Texas law makes clear that the military's negligence—if any—would not be a proximate

---

[101] *McManaway*, 852 F.3d at 451 (quoting *Lane*, 529 F.3d at 560).

[102] *Lane*, 529 F.3d at 565 ("we must analyze appellant's claim as it would be tried, to determine whether a political question will emerge") (internal quotation omitted).

[103] TEX. CIV. PRAC. & REM. CODE § 33.004.

[104] TEX. CIV. PRAC. & REM. CODE § 33.003(b) ("This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.").

[105] TEX. CIV. PRAC. & REM. CODE § 33.004(l) ("After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.").

18

cause of the explosion.  Instead, at most the military created a condition that allowed the
Defendants' negligence to cause the injury.

The fact that the military required former Taliban like Nayeb to be employed on the base
at most created the condition that allowed the Defendants' negligence in properly supervising
him on the morning of November 12, 2016, to be a proximate cause of the explosion.  But the
military's negligence, if any, was too remote to be considered a legal cause under Texas law.
Three Texas Supreme Court cases make clear that the military's negligence, if any, was too
remote to be considered a proximate cause of the bombing under Texas law.

In *Lear Siegler v. Perez*, the plaintiff was a Texas Highway Department employee pulling
a flashing arrow sign behind a sweeping operation to warn drivers of ongoing highway
maintenance.[106]  The plaintiff stopped his truck when the sign malfunctioned, and was injured
and later died when a van struck the sign, which in turn hit the plaintiff.[107]  The plaintiff's heirs
claimed the defendant manufactured a defective sign that proximately caused the accident.[108]
The Texas Supreme Court determined, as a matter of law, that the circumstances of the accident
were too remotely connected with the defendant's conduct to constitute the proximate cause of
the plaintiff's death.[109]  While acknowledging that a defendant's negligence may expose another
to an increased risk of harm by placing him in a particular place at a given time, the Texas

---

[106] *Lear Siegler v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

[107] *Id*.

[108] *Id*.

[109] *Id*. at 472.

Supreme Court concluded that the "happenstance of place and time" may be too attenuated for liability to be imposed under the common law.[110]

The Texas Supreme Court has made clear that a defendant's action is not a proximate cause if it merely creates a condition after which an accident occurs. In *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, the plaintiff was a patient at a mental hospital.[111] During her stay, she became friends with her roommate. On the same day, the plaintiff and her roommate requested to be released, and the plaintiff told a nurse she planned to spend time with her roommate after her release.[112] Their physicians released them the same day without consulting with one another. The next day, the plaintiff was riding in a car driven by her roommate when her roommate had a psychotic episode, drove at a high speed, swerved to avoid a dog in the road, lost control of the car, and crashed.[113] The plaintiff sued her healthcare providers for negligence.[114] She argued her that uncorrected mental condition left her vulnerable to her roommate's manipulative and controlling behavior and caused them to be in the car together. The Texas Supreme Court concluded that negligence may have allowed the plaintiff to be in the car with her roommate, but it did not cause her roommate to experience a psychotic episode, drive wildly, or crash the car.[115] The defendants' negligence, if any, merely created a condition in which the accident occurred, but it did not cause the accident or injuries.[116]

---

[110] *Id.*

[111] *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 796 (Tex. 2004).

[112] *Id.* at 796–97.

[113] *Id.* at 797.

[114] *Id.*

[115] *Id.* at 801–02.

[116] *Id.*

The Texas Supreme Court has also made clear that an initial act of negligence that is not an active and efficient cause of the harm and injuries is not a proximate cause.  In *Bell v. Campbell*, three individuals were hit by a car while removing debris from an earlier accident.[117] Two were killed, and the third suffered serious injuries.[118]  The Texas Supreme Court held that the initial accident was not the proximate cause of the deaths and injuries because it merely created the condition that attracted the three men to the scene, and did not actively contribute to the injuries resulting from the second accident.[119]  Where an initial action, even if negligent, is not an active and efficient cause of a plaintiff's injury, but merely creates a condition by which a second act of negligence occurs, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of the plaintiffs' injuries.[120]

Therefore, because the Defendants have not established that under "all plausible sets of facts that could be proven," the military's negligence would have to be considered by the jury, they have not established that this case necessarily contains a nonjusticiable political question.[121] This Court, therefore, should deny the Defendants' motion to dismiss based on the political-question doctrine.

###    III.    Response to Summary Judgment Motion Based on 28 U.S.C. § 2680(j)

In addition to their motion to dismiss based on the political-question doctrine, the Defendants filed a summary-judgment motion based on combatant-activities preemption under

---

[117] *Bell v. Campbell*, 434 S.W.2d 117, 118 (Tex. 1968).

[118] *Id*.

[119] *Id*. at 122.

[120] *Id*.

[121] *Lane*, 529 F.3d at 559-60.

21

28 U.S.C. § 2680(j).[122]  This Court should deny the Defendants' summary-judgment motion

based on combatant-activities preemption under 28 U.S.C. § 2680(j) because:

- The Fifth Circuit has never recognized that combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors;

- Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that the Defendants have not pled;

- Even if combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors, it should be limited to procurement contracts and not apply to service contracts like the one here;

- The Defendants have not conclusively established that the Plaintiffs' claims arise out of "combatant activities" "during time of war"; and

- The Plaintiffs are entitled to discovery on the merits before they are required to respond to the Defendants' summary-judgment motion.

## A.    The Fifth Circuit has never recognized that combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors.

The Defendants argue that the Plaintiffs' claims are barred by 28 U.S.C. § 2680(j), which

they contend creates a so-called "combatant-activities preemption" that bars suits against

government contractors that arise out of the combatant activities of military forces during time of

war.[123]  Combatant-activities preemption is an attempt by government contractors to take

advantage of an exception to the Federal Tort Claims Act.[124]  There is no federal statute that

---

[122] Doc. 45 at 88-91; 28 U.S.C. § 2680(j) ("The provisions of this chapter and section 1346(b) of this title shall not apply to— … (j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.").

[123] Doc. 45 at 88-91.

[124] *Martin v. Halliburton*, 618 F.3d 476, 486 (5th Cir. 2010).

states that claims against government contractors are preempted or otherwise barred if they arise

out of the combatant activities of military forces during time of war.[125]

The Federal Tort Claims Act is a waiver of sovereign immunity for certain tort claims

against the government.[126]  The Federal Tort Claims Act contains certain exceptions where

sovereign immunity is not waived.[127]  One of those exceptions is contained at 28 U.S.C. §

2680(j), which provides that the Federal Tort Claims Act waiver of sovereign immunity does not

apply to any "claim arising out of the combatant activities of the military or naval forces, or the

Coast Guard, during time of war."[128]

Government contractors are private entities that do not have sovereign immunity, so the

Federal Tort Claims Act does not apply to claims against them.[129]  But some circuits have held

that the Federal Tort Claims Act's combatant-activities exception in 28 U.S.C. § 2680(j) should

be extended to shield government contractors from liability.[130]  Those circuits have held that the

Federal Tort Claims Act's combatant-activities exception in 28 U.S.C. § 2680(j) acts to preempt

claims against government contractors for claims arising out of combatant activities during times

---

[125] *Id.*

[126] 28 U.S.C. § 2674; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) ("The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred.").

[127] 28 U.S.C. § 2680.

[128] *Id.*; *Arnold v. United States*, 140 F.3d 1037 (5th Cir. 1998) (unpublished).

[129] *Martin*, 618 F.3d at 486 (The Federal Tort Claims Act's combatant-activities exception "does not apply directly to government contractors"); *Koohi v. United States*, 976 F.2d 1328, 1336–37 (9th Cir. 1992) ("The plaintiffs' action against the [government contractor] is not barred by sovereign immunity.  Private parties are not entitled to such a defense.").

[130] *See*, *e.g.*, *Saleh v. Titan Corp.*, 580 F.3d 1, 7 (D.C. Cir. 2009); *Koohi*, 976 F.2d at 1336–37.

of war.[131]  That extension to government contractors is knows as combatant-activities

preemption.

The Fifth Circuit has not recognized combatant-activities preemption as a valid legal

theory.[132]  This Court should not go beyond established Fifth Circuit precedent, so it should

decline to recognize combatant-activities preemption.  This Court can deny the summary-

judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) on this

basis alone.

## B.   Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that the Defendants have not pled.

Even if this Court were to recognize the doctrine of combatant-activities preemption, it

should deny the Defendants' summary-judgment motion based on that theory because it is an

affirmative defense they did not plead.

While the Fifth Circuit has not recognized combatant-activities preemption under 28

U.S.C. § 2680(j), it has held that the doctrine  is an affirmative defense.[133]  All of the Defendants

have filed answers, but none raised combatant-activities preemption under 28 U.S.C. § 2680(j) as

an affirmative defense.[134]

---

[131] *Id.*, 580 F.3d at 7; *Koohi*

[132] *McManaway*, 852 F.3d at 447 ("KBR also argues that this court should extend the Federal Tort Claims Act's combatant-activities exception to shield government contractors from liability when they are involved in activities connected to the military's strategic objectives.… [W]e do not reach KBR's preemption argument."); *see also Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1105 (N.D. Ill. 2015) ("There is some conflict in the law as to whether the combatant activities doctrine can ever apply to a private contractor.").

[133] *McManaway*, 852 F.3d at 447.

[134] Doc. 1-3 at 90-120 (filed June 19, 2019); Doc. 3 (filed June 26, 2019).

The Fifth Circuit has held that a defendant that has failed to plead an affirmative defense in its answer cannot move for summary judgment based on that non-pled affirmative defense.[135] This Court, therefore, should deny the Defendants' summary-judgment motion based on the affirmative defense of combatant-activities preemption under 28 U.S.C. § 2680(j) because they have not pled that affirmative defense.

This Court can deny the summary-judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) on this basis alone.

**C.     Even if combatant-activities preemption under 28 U.S.C. § 2680(j) applies to claims against government contractors, it should be limited to procurement contracts and not apply to claims brought by United States citizens supporting the United States military.**

The courts that have recognized combatant-activities preemption apply it in different ways.  Some courts limit it to government contractors supplying military equipment to the military, so government contractors providing services do not fall under combatant-activities preemption.[136]  That is because the government provides great detail regarding supplies it is purchasing, while service contracts contain much more discretion.[137]  The contract the

---

[135] *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1307 (5th Cir. 1987) ("An affirmative defense may be raised on a motion for summary judgment only if that motion is the first pleading responsive to the substance of the allegations.").

[136] *See, e.g., Fisher v. Halliburton*, 390 F. Supp. 2d 610, 615–16 (S.D. Tex. 2005); *Smith*, 2006 WL 1342823, at *5.

[137] *Fisher*, 390 F. Supp. 2d 616 ("claims involving complex equipment acquired by the Government in its procurement process, which inevitably implicates nuanced discretion and sophisticated judgments by military experts.  Plaintiffs' claims in this case do not involve any allegation that Defendants supplied equipment, defective or otherwise, to the United States military.  The Court concludes that extension of the government contractor defense beyond its current boundaries is unwarranted and the FTCA does not bar Plaintiffs' claims.") (internal citation omitted).

Defendants were operating under was a service contract—not a procurement contract—so combatant-activities preemption under 28 U.S.C. § 2680(j) should not apply here.[138]

Some courts also limit combatant-activities preemption to claims brought by perceived enemies during combat.[139]  Those courts do not bar claims brought by United States citizens against private corporations.[140]

Federal courts have expressed concern that the "combatant activities exception, cut loose from its rationale, threatens to metamorphose into a near-absolute immunity for contractors."[141] Therefore, if this Court were to recognize the doctrine of combatant-activities preemption under 28 U.S.C. § 2680(j), it should limit it to procurement contracts and not include claims by United States citizens supporting the United States military.  This Court can deny the summary-judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) on this basis alone.

---

[138] Doc. 45 at 16 ("Fluor provided base operations support to the U.S. Military at BAF.  Fluor provided a range of civil services required by any sizable population center.") (citation omitted).

[139] *Koohi*, 976 F.2d at 1336–37 (Applying combatant-activities preemption under 28 U.S.C. § 2680(j) to claims by passengers on the Iranian Airbus shot down by the U.S.S. Vincennes because "one purpose of the combatant activities exception is to recognize that during wartime encounters no duty of reasonable care is owed to those against whom force is directed as a result of authorized military action"); *Lessin v. Kellogg Brown & Root*, CIVA H-05-01853, 2006 WL 3940556, at *3–5 (S.D. Tex. June 12, 2006) ([I]n *Koohi*, the court was also concerned with the lack of any duty of reasonable care owed to a perceived enemy during combat.  This case, on the contrary, concerns the duty of care owed by a private corporation to United States citizens, and the concern noted by the court in *Koohi* is inapplicable to this case."); *Smith*, 2006 WL 1342823, at *5 ("*Koohi* involved action by the United States military against a perceived enemy.…  [T]he plaintiffs in *Koohi* were not United States citizens but 'perceived enemy' mistakenly targeted by the United States military.").

[140] *See Lessin*, 2006 WL 3940556, at *4; *Smith*, 2006 WL 1342823, at *5.

[141] *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 693–94 (D.N.J. 2013).

**D.     The Defendants have not conclusively established that the Plaintiffs' claims arise out of "combatant activities" "during time of war."**

This Court should deny the Defendants' summary-judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) even if it accepts the doctrine because they have not conclusively established the elements of their affirmative defense. A defendant moving for summary judgment on an affirmative defense must conclusively establish each element of the affirmative defense.[142]

At a minimum, the Defendants must conclusively establish that the Plaintiffs' claims arose out of "combatant activities" "during time of war."[143] Because the Defendants have not met that burden, this Court can deny the summary-judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) on this basis alone.

**1.      The Defendants have not conclusively established that they were engaged in "combatant activities."**

Even the courts that have recognized combatant-activities preemption for government contractors have limited it to those cases truly arising out of "combatant activities."[144] As federal courts have noted, "[a]iding others to swing the sword of battle is certainly a 'combatant activity,' but the act of returning it to a place of safekeeping after all of the fighting is over cannot logically be cataloged as a 'combat activity.'"[145]

---

[142] *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 769 (N.D. Tex. 2017) (Boyle, J.).

[143] Doc. 45 at 88-91; 28 U.S.C. § 2680(j) ("The provisions of this chapter and section 1346(b) of this title shall not apply to— … (j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.").

[144] 28 U.S.C. § 2680(j).

[145] *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948); *McManaway v. KBR, Inc.*, 906 F. Supp. 2d 654, 665–66 (S.D. Tex. 2012); *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1105 (N.D. Ill. 2015).

In its motion, Fluor states that it performed "civil services" at the base, including "pest control services, laundry services, food service operations, and motor pool operations."[146]  That is not aiding those who swing the sword of battle.  It is not even returning the sword of battle to a place of safekeeping after all of the fighting is over.

Nayeb worked in the nontactical vehicle yard.[147]  The Defendants have not conclusively established that their work aided others to swing the sword of battle sufficient to make the Plaintiffs' claims arise out of "combatant activities."

### 2. The Defendants have not conclusively established that Nayeb's actions took place "during time of war."

Combatant-activities preemption applies only to injuries arising "during time of war."[148] The Fifth Circuit has recognized that can apply "even in the absence of a formal declaration of war."[149]  It has held that the First Gulf War in 1991 was a "time of war" "when the United States armed forces marched into Kuwait and then Iraq."[150]

The Defendants have not conclusively established that actions in November 2016 in Afghanistan qualified as a "time of war."  The Defendants do not offer any evidence that this was a "time of war."[151]  Instead, they cite to a 1992 case saying that the First Gulf War in 1991

---

[146] Doc. 45 at 16.

[147] *Id*. at 9.

[148] 28 U.S.C. § 2680(j) ("Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.").

[149] *Arnold*, 140 F.3d 1037, at *2.

[150] *Id.* (citing *Koohi*, 976 F.2d at 1333-34).

[151] Doc. 45 at 88-91.

was a "time of war" and a 2014 case applying combatant-activities preemption under 28 U.S.C. § 2680(j) to actions in Afghanistan in the early 2000s.[152]

While the invasion of Kuwait in 1991 and military actions in Afghanistan in the early 2000s may have been times of war, that does not mean that Afghanistan in November 2016 was a "time of war."  And it is certainly not conclusive evidence of that fact.

As the Captain of the USS Theodore Roosevelt emphasized recently, the United States is not currently "at war."[153]  The Defendants have not carried their burden of conclusively establishing that the United States was still at war in Afghanistan in November 2016, so their summary-judgment motion should be denied.

## E. The Plaintiffs are entitled to discovery on the merits before they are required to respond to the Defendants' summary-judgment motion.

Even if this Court were to find merit in the Defendants' summary-judgment motion, it should allow the Plaintiffs to conduct discovery before ruling on the motion.  This case is at the initial stages and the Plaintiffs have been allowed only limited jurisdictional discovery.[154]  The Defendants limited the depositions to that issue, objecting to questions they thought were even "pretty close to exceeding jurisdictional discovery."[155]

This Court, therefore, should allow the Plaintiffs to conduct discovery before it were to grant the Defendants' summary-judgment motion based on combatant-activities preemption under 28 U.S.C. § 2680(j).

---

[152] Doc. 45 at 88-91 (citing *Koohi*, 976 F.2d at 1335; *In re KBR, Inc. Burn Pit Litig*., 744 F.3d 326, 346-51 (4th Cir. 2014)).

[153] https://news.usni.org/2020/03/31/carrier-roosevelt-co-asks-navy-to-quarantine-entire-crew-ashore-as-covid-19-outbreak-accelerates ("However, we are not at war, and therefore cannot allow a single Sailor to perish as a result of this pandemic unnecessarily").

[154] Doc. 38 (Nov. 27, 2019) (allowing jurisdictional discovery).

[155] Ex. B at 90.

## IV.    Conclusion

This Court should deny the Defendants' Rule 12(b)(1) motion to dismiss for lack of

subject-matter jurisdiction under the political-question doctrine and the Defendants' Rule 56

motion for summary judgment based on combatant-activities preemption under 28 U.S.C. §

2680(j).

Respectfully submitted,

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Peter K. Taaffe
Texas Bar No. 24003029
ptaaffe@txattorneys.com
THE BUZBEE LAW FIRM
JPMorgan Chase Tower
600 Travis, Ste. 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Fax: (713) 223-5909

David George
Texas Bar No. 00793212
BAKER•WOTRING LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Telephone: (713) 980-1700
Fax: (713) 980-1701
dgeorge@bakerwotring.com

Lisa Blue
Texas Bar No. 02510500
BARON AND BLUE
3300 Oak Lawn Ave., 3rd Floor
Dallas, Texas 75219
Telephone: (214) 750-1700
lblue@baronandblue.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 29, 2020, I served a true and correct copy of the foregoing on counsel of record through the Court's CM/ECF system under Local Rule 42.1 and the Federal Rules of Civil Procedure, as follows:

Darrell L. Barger
Adam L. Anthony
HARTLINE BARGER LLP
1980 Post Oak Blvd., Suite 1800
Houston, Texas 77056

J. Reid Simpson
HARTLINE BARGER LLP
800 N. Shoreline Blvd., Suite 2000
North Tower
Corpus Christi, Texas 78401

Brian Rawson
HARTLINE BARGER LLP
8750 N. Central Expy., Suite 1600
Dallas, Texas 75231

David Grant Crooks
C. Dunham Biles
FOX ROTHSCHILD LLP
Two Lincoln Centre
5420 Lyndon B. Johnson Freeway, Suite 1200
Dallas, Texas 75240

Kathy Kimmel
FOX ROTHSCHILD LLP
Campbell Mithun Tower
222 S. Ninth St., Suite 2000
Minneapolis MN 55402-3338

*/s/ Peter K. Taaffe*
Peter K. Taaffe