# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| Charlotte Loquasto, et al., | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:19-CV-01455-B |
| | § | |
| vs. | § | (Consolidated with |
| | § | Civil Action No. 3:19-CV-01624-B) |
| Fluor Corporation, Inc., et al., | § | |
| | § | |
| Defendants. | § | |

**ALLIANCE PROJECT SERVICES, INC.'S REPLY IN SUPPORT OF DEFENDANTS FLUOR CORPORATION, INC., FLUOR ENTERPRISES, INC., FLUOR INTERCONTINENTAL, INC., AND FLUOR GOVERNMENT GROUP INTERNATIONAL, INC.'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE POLITICAL QUESTION DOCTRINE AND, ALTERNATIVELY, RULE 56 MOTION FOR SUMMARY JUDGMENT UNDER 28 U.S.C. § 2680(j) (COMBATANT ACTIVITIES PREEMPTION)**

**FOX ROTHSCHILD LLP**

C. Dunham Biles
State Bar No. 24042407
David Grant Crooks
State Bar No. 24028168
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas 75240
972-991-0889 – Phone
972-404-0516 – Fax
cbiles@foxrothschild.com
dcrooks@foxrothschild.com

Kathy S. Kimmel, (Admitted *Pro Hac Vice*)
Fox Rothschild, LLP
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
612-607-7306 – Phone
612-607-7100 – Fax
kkimmel@foxrothschild.com
***Attorneys for Alliance Project Services, Inc***.

TO THE HONORABLE JANE J. BOYLE, UNITED STATES DISTRICT JUDGE:

Alliance Project Services, Inc. ("APS") submits this Reply in support of the Motion by the Defendant Fluor entities. (Doc. 45). APS and Fluor are referred to collectively as "Defendants."

**I.  THIS DISPUTE CANNOT BE RESOLVED WITHOUT QUESTIONING THE MILITARY'S JUDGMENT ON MATTERS COMMITTED TO THE EXECUTIVE OR LEGISLATIVE BRANCHES OF GOVERNMENT—WHICH THE POLITICAL QUESTION DOCTRINE PRECLUDES—THEREBY MAKING THIS DISPUTE NONJUSTICIABLE.**

Because the Military's discretionary policies, decisions, acts, and omissions relating to base security and counterinsurgency policies and tactics are central to Plaintiffs' claims and Defendants' defenses, political questions are inextricable from this case. Plaintiffs' arguments overlook the complexities and realities of this case.[1] This action does not present an ordinary negligent supervision claim or negligence claim under Western-culture employment concepts. Rather, Plaintiffs' claims arose at a Military base in Afghanistan, in a war zone; where actions must comply with Military-approved policies, contracts and directions; where only people approved by the Military can gain base access and who then must pass through Military-controlled security checkpoints; and where a suicide bomber connected to the Taliban who had been vetted by the Military for base access, smuggled items through the Military's security system to effectuate his hostilities toward the United States. "The interjections of tort law into the realms of military affairs would effectively permit judicial reappraisal of judgments the Constitution has committed to the other branches."[2] Such claims are foreclosed by the political question doctrine.

---

[1] Evaluating existence of a political question requires a "look beyond the complaint, considering how the Plaintiffs might prove their claims and how [defendant] would defend." *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008). *Smith v. Halliburton Co.*, 2006 WL 2521326, at *2 (S.D. Tex. Aug. 30, 2006) ("the court analyzes the claim 'as it would be tried, to determine whether a political question will emerge.'") (citation omitted).

[2] *American K-9 v. Freeman*, 556 S.W.3d 246, 254-55 (Tex. 2018) (internal citations omitted).

1

A negligence claim under Texas law requires a plaintiff to "produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Questions of duty and proximate cause "both rest on a determination of foreseeability." *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655, 659 (Tex. 1999).[3] Proximate cause has two components: cause-in-fact and foreseeability. *See id.* As the Fifth Circuit explained in *Lane*, "[w]ith the parameters of the political question doctrine and the nature and elements of the Plaintiffs' tort claims in mind, we focus on the element that is the most critical element for political question analysis— causation." *Lane*, 529 F.3d at 565. The same analysis applies here.

Plaintiffs' alleged "negligence/gross negligence" claims as to hiring, training, supervision, management, and retention[4] of Nayeb require proof that: (1) Defendants knew or should have known through the exercise of reasonable care—the foreseeability—of the risk that Nayeb would detonate a bomb within the base or otherwise inflict extreme violence on others,[5] and (2) Defendants' alleged negligence was the cause-in-fact of Plaintiffs' injuries.

---

[3] "If the risk is not foreseeable, "there is no duty." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996).

[4] While the Texas Supreme Court has not definitively ruled on the existence of such claims, as this Court has observed, "Texas law allows recovery for negligent hiring, training and supervision where an employer knew or should have known through the exercise of reasonable care that an employee was incompetent or unfit and that his hiring or retention would thereby create an unreasonable risk of harm to others." *Hanan v. Crete Carrier Corp.*, No. 3:19-CV-0149-B, 2020 WL 42269, *5 (N.D. Tex. Jan. 3, 2020) (citations omitted).

[5] Plaintiffs' injuries resulted from Nayeb detonating a bomb. "Foreseeability usually is determined by whether the defendant is aware of prior, similar conduct by third parties." *Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018) (citations omitted). "[S]ufficient evidence must exist indicating that…defendant knew or should have known of the employee's…potential for causing harm." *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex. App.-Houston [14th Dist.] 2007, pet. struck). As such, Defendants' alleged knowledge that Nayeb had fallen asleep during his work shift and had read the Quran are not relevant to the foreseeability required in regard to Plaintiffs' claims.

### A. Evaluating foreseeability of the risk Nayeb would detonate a bomb on base inextricably requires examination of the Military's discretionary policies and decisions that are constitutionally protected from judicial review.

Foreseeability as to the risk of Nayeb's propensity to inflict grave violence on the base cannot be evaluated without probing, and second-guessing, the Military's judgment, acts, and omissions regarding base security and counterintelligence policy.

Pursuant to Military policy, base security, vetting, and counterintelligence investigations were conducted solely by the Military, with Defendants having no ability to do so.[6] Only Afghan nationals who passed the Military's vetting process were extended an employment opportunity.[7]

In the course of gathering intelligence, the Military learned of Nayeb's Taliban ties, which resulted in the Military's heightened concern of a potential security risk.[8] Recognizing these security concerns, the military accepted the responsibility "to mitigate these risks" and "committed to ensuring the continued safety" of those at the training center on base.[9] Nevertheless, the Military

---

[6] *See* Doc. 45 (Motion to Dismiss, App'x at 844-45 (Ex. 23)), App'x at 119 (Ex. 4 (BAF Access Policy, at pp. 3, 5, 8, 9, 22-24)), App'x at 18 (Ex. 1 (Wilson Decl. at ¶49)), App'x at 1007 (Ex. 53 (Nickles Depo, at 23.9-10, 42.11-43.7, 72.16-74.2, 81.10-14))). Because APS does not have the ability to conduct background investigations, APS relies on the Military to conduct background searches and vet potential applicants. *Id.* App'x at 1007 (Ex. 53 (Nickles Depo, at 23.9-10, 42.11-43.7, 72.16-74.2, 81.10-14))).

[7] *See* Doc. 45 (Motion to Dismiss, App'x at 844-45 (Ex. 23)), App'x at 843 (Ex. 22)). "What happens is when an HCN is identified as a potential candidate, that candidate provides a sealed envelope with his background, police report from his local community or village. APS never sees that. That is taken to the U.S. military, i.e., force protection. Force protection opens that. [APS] never get[s] to see any of that. [U.S. Military] make[s] the decision based on their investigation whether he's eligible or not eligible to work." (App'x at 1007 (Ex. 53 (Nickles Depo, at 42.11-19))). Such background check and approval by the Military were a condition to Nayeb's work on base. (*Id.* at 44.3-13, 73.14-74.2). APS would proceed in the hiring process for an Afghan national like Nayeb only after receiving "the green light from the U.S. Military to proceed." (*Id.* at 44.3-13, 72.16-74.2, t 44; *Id.* at Dep. Ex. 2 at APS000255, APS000258).

[8] After the bombing, Thomson Reuters reported that according to "government and security officials," "Afghan intelligence warned the U.S. military at least twice that a worker could be planning an attack" at Bagram. *See id.*, App'x at 851 (Ex. 26)). The bombing inside the base, "raised questions about Western forces' screening of local workers and about programmes designed to reintegrate insurgents into society." (*Id.* at 852 (Ex. 26)). "The Afghan Taliban claimed responsibility soon after the bombing, saying the assailant was one of their fights and that they had been planning it for four months." (*Id.* at 853 (Ex. 26)).

[9] *See id.,* App'x at 138 (Ex. 7)). Nayeb was also known as Qari Naeb Hafezi.

unconditionally approved Nayeb to work on base.

Yet, the Military chose not to address with Defendants the information about Nayeb's Taliban ties or the Military's resulting security concern.[10] During the five years of Nayeb's work at Bagram, the Military screened, investigated, and approved his continued base access many times after semi-annual, random, and counter-intelligence screenings and interviews. The military never provided Defendants with any negative results or concerns as to Nayeb, despite finding Nayeb's responses to be "trained and coached" during the counterintelligence vetting process a few months before the incident.[11] Nayeb would not have been qualified for employment with APS if APS knew of Nayeb's connection to the Taliban.[12]

Here, exercising its judgment and discretion, the Military chose to unconditionally approve Nayeb for base access despite learning of his Taliban ties and having security concerns. Why it did so involves strategic calculations as to the military's authority and responsibility as to base security and counter-intelligence tactics. Why the Military chose not to inform Defendants of such important information also involves the military's strategic determinations over which it has sole judgement and discretion. These discretionary decisions by the Military are insulated from judicial review. *See Lane*, 529 F.3d at 560.

> **B.  Military judgment as to base security measures and counterinsurgency strategies will be impermissibly examined—albeit without a judicially discoverable and manageable standard—if this case proceeds.**

However, this action cannot be determined without examining Military judgments. *See,*

---

[10] *See id.*, App'x at 18-19 (Ex. 1(Wilson Decl., at ¶¶ 49-51)), App'x at 1007 (Ex. 53 (Nickles Depo, at 42.11-43.7, 72.16-74.2))).

[11] *See id.*, App'x at 915 (Ex. 35), App'x at 119 (Ex. 4 BAF Access Policy, at p. 12), App'x at 18-19 (Ex. 1(Wilson Decl., at ¶¶ 49-51)), App'x at 1007 (Ex. 53 (Nickles Depo, at 73.1-74.1))).

[12] *See id.*, App'x 1007 (Ex. 53 (Nickles Depo, at 42.11-19); *Id.*, Depo. Ex. 2 at APS000255) ("To be considered for employment by APS the candidate must meet the criteria list below: No known ties to the Taliban.")).

*e.g., American K-9*, 556 S.W.3d at 256 ("Causation defenses, in particular, often pose political questions when the court must disentangle the military's and contractor's respective causal roles.")

Moreover, Defendants' defenses—including in regards to the comparative negligence defense[13]—would invoke, at minimum, the following military decisions and judgments:

- the alleged inadequacy of the Military decisions and actions relating to: base security measures, daily screening of Nayeb as he entered the base, policies regarding security at the base, periodic investigations into Nayeb's background—which were exclusively within the military's authority and abilities;

- the risks associated with the Department of Defense's chosen counterinsurgency "COIN" Strategy known as "Afghan First Program" to employ Afghan nationals at Bagram,[14] such as Nayeb;

- sponsoring Nayeb for training and ultimate employment at Bagram knowing he was a "former Taliban member" and with the "understand[ing] that there may be security concerns with admitting a former insurgent" into such role;

- not addressing such information and concerns about Nayeb's Taliban ties with Defendants; and

- repeated authorization for Nayeb's base access despite the Military's policy that past connections with groups like the Taliban must be fully disclosed and evaluated.[15]

The Military's immunity from suit does not bar consideration of the Military's proportional responsibility. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868-69 (Tex. 2009). *Contrast Hencely v. Fluor Corp., Inc.*, No. 6:19-CV-00489-BHH (D.S.C. June 10, 2020) (Opinion and Order) (Doc. 63-1); *see Loquasto v. Fluor Corp., Inc.*, 3:19-CV-01624-B. (Doc. 62.)

Allowing this action to proceed would require the court to substitute its judgment for the Military's discretionary judgment of adequacy of intelligence gathering, risk assessment, Afghan First counterinsurgency policy, security measures applicable to a higher risk badge holder like

---

[13] *See* Tex. Civ. Prac. & Rem Code §§33.033, 33.004; *American K-9*, 556 S.W.3d at 258.
[14] *See* Doc. 45 (Motion to Dismiss, App'x at 136-37 (Ex. 6)).
[15] *See id.*, App'x at 119 (Ex. 4 (BAF Access Policy, at p. 23)).

Nayeb, and the Military's determination not to address the Taliban connection or risk assessment with Defendants. Not only would such substitute determination be an impermissible intrusion into a critical area reserved to the other branches of government, there is no judicially discoverable or manageable standard for the court to make such judgment. *See Smith v. Halliburton Co.*, 2006 WL 2521326, at *6. Such inquiry would run afoul of the political question doctrine.

## II. PLAINTIFFS' ARGUMENT THAT THE POLITICAL QUESTION IS NOT IMPLICATED OVERLOOKS UNDISPUTABLE FACTS AND RELIES ON CASES WITH SIGNIFICANT DISTINCTIONS THAT DO NOT SUPPORT THE ARGUMENT AS APPLIED TO THIS CASE.

The cases on which Plaintiffs rely support the inescapable conclusion that the disputes relating to Plaintiffs' claims—and the defenses thereto—cannot be resolved without undertaking an impermissible inquiry into military judgments. *See* Dkt. 57 at 9-18 (citing *McManaway v. KBR, Inc.*, 852 F.3d 444 (5th Cir. 2017); *Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008); *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*, 853 F.3d 173 (5th Cir. 2017)).

*McManaway* involved tort claims against KBR, a private contractor with the United States Military, by plaintiffs who had worked at an industrial facility in Iraq that KBR was restoring for the military. *McManaway v. KBR, Inc.*, 852 F.3d at 448-49. The plaintiffs claimed KBR's handling of contamination at the facility led to their injuries. *Id.* at 449. Initially, KBR moved to dismiss, asserting the claims were nonjusticiable under the political question doctrine and were preempted. *Id.* The district denied the motion.[16] *Id.* Thereafter, KBR moved for summary judgment,

---

[16] The district court certified for interlocutory appeal its decision denying the motion to dismiss based on the political question doctrine; the Fifth Circuit granted leave to appeal, and later determined interlocutory review was premature and dismissed the appeal. *McManaway v. KBR, Inc.*, No. 12-20763, 2013 WL 8359992, at *1 (5th Cir. Nov. 7, 2013). The court reasoned that to address dismissal on political question grounds, it needed, *inter alia*, to review the district court's decision denying KBR's request to designate the United States as a responsible third party under Texas's proportionate liability statutes, a decision that the district court had denied certification. *Id.* Because "the political question analysis may ultimately depend on the correctness of the order denying the third-party designation," the Fifth Circuit dismissed the

6

contending plaintiffs could not establish causation. *Id.* The district court agreed and entered judgment in KBR's favor. *Id.* The parties cross appealed; KBR asserted the claims were barred by the political question doctrine.  Notably, although the Fifth Circuit recognized KBR's argument regarding the political question doctrine, the court did <u>not</u> decide whether the doctrine applied to the *McManaway* case. *Id.* at 450-51. Concluding that plaintiffs "failed to carry their burden at the summary judgment stage," on state law causation grounds—thus affirming judgment in favor of KBR—the court determined it did not need to "undertake a searching review of a hypothetical case" involving KBR's defense implicating military decisions when plaintiffs' claims failed under application of traditional tort standards.  *Id.* at 451.  Nevertheless, the court recognized the import of the doctrine; "When a political question 'is inextricable from the case at bar,' 'a court lacks the authority to decide the dispute before it.'"  *Id.* at 450 (citations omitted.)  Although heavily cited by Plaintiffs, the *McManaway* case does not support the conclusion that Plaintiffs advocate.

The Fifth Circuit's concern over evaluating military decision-making in arriving at causation was equally evident in *Lane*, which involved claims by civilian truck drivers who alleged that KBR fraudulently understated the risks involved during the recruitment process and negligently allowed truck convoys to depart when circumstances on the ground were too dangerous.  *Lane*, 529 F.3d 567.  The Fifth Circuit reversed the district court's order dismissing the plaintiffs' fraud and negligence claims on political question grounds because it found it needed further factual development before determining if the doctrine was an impediment. *Id.* at 548.  The court's analysis identified causation as the element of plaintiffs' claims most likely to raise a political question.  *Id.* at 565.  Addressing the plaintiffs' fraud claims, the court reasoned causation

---

appeal, without prejudice, until the political question was ripe for consideration.  *Id.* (citation omitted). Here, such responsible third party designation was granted.  (Docs. 30-31.)

could be established by showing KBR knew its representations of the risks involved were greater than it disclosed, which the plaintiffs could prove simply by proving what KBR knew and when it knew it, without questioning the validity of the military's judgments. *Id.* With respect to the plaintiffs' negligence claims, the plaintiffs could prove that KBR knew conditions were dangerous and had assumed a duty to protect its employees in such circumstances, which in some circumstances possibly might not implicate military judgments (for example, if the plaintiffs proved that the military told KBR conditions were too dangerous). *Id.* Importantly, as to negligence, the court noted the analysis would diverge if the military's role had to be second guessed, in which case negligence "allegations move precariously close to implicating the political question doctrine, and further factual development very well may demonstrate that the claims are barred." *Id.*

In *Kuwait Peals Catering Co., WLL*, the court determined no political question existed because the dispute required construing a contract and determining whether breach had occurred and other contract-related allegations. *Id.*, 853 F.3d at 182 (noting that the claims "can be addressed by standard contract analysis").

In contrast to these cases, the facts here demonstrate this case implicates political questions. The military knew, but did not tell Defendants, that Nayeb had belonged to the Taliban. The military intentionally placed Nayeb at the base despite his Taliban ties while acknowledging the heightened security concern. The military screened and granted Nayeb access to the base. Plaintiffs can prove no plausible set of facts that will sidestep the need to address causation and second-guess the military's information and judgment as to Nayeb's employment at the base. The sensitive military judgments that justified the risks of employing Nayeb are inextricably intertwined with Plaintiffs' claims and require dismissal on political question grounds.

Respectfully submitted,

Dated: July 10, 2020  **FOX ROTHSCHILD LLP**

By: /s/ David Grant Crooks
C. Dunham Biles
State Bar No. 24042407
David Grant Crooks
State Bar No. 24028168
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas 75240
972-991-0889 – Phone
972-404-0516 – Fax
cbiles@foxrothschild.com
dcrooks@foxrothschild.com

-AND-

Kathy S. Kimmel, (Admitted *Pro Hac Vice*)
Fox Rothschild, LLP
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
612-607-7306 – Phone
612-607-7100 – Fax
kkimmel@foxrothschild.com

***Attorneys for Alliance Project Services, Inc***.

## CERTIFICATE OF SERVICE

I certify that on this 10th day of July, 2020, a true and correct copy of the foregoing document was served on counsel of record for the parties through the CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/* David Grant Crooks
David Grant Crooks

9